James D. Russell & another *vs.* Eastern Railroad Company & another.

A corporation which owned a quantity of land which had been laid out into rows of build ing lots entered into a written agreement that, upon the payment of a stipulated price by a specified day, they would execute to A. and B. a deed of the greater portion of the lots, the numbers of which were given, in two different rows; and that, before making a sale of either of the lots reserved in one row, they would offer the same for six days to A. and B. on the same terms with the other lots; and that they would offer to A. and B. the reserved lots in the other row "on the same terms and in the same manner, in case the said lots shall not be used for a hotel." A hotel was built and used upon the last mentioned lots for ten years, which was long after the day specified in the contract for the execution of the deed of the first mentioned lots, and was then closed, and the premises were sold to one who purchased with notice of the contract of A. and B., and were devoted

to other purposes. *Held* that A. and B. were not entitled, under the agreement, to claim a conveyance to them of the lots which had been used for a hotel, or to introduce parol evidence for the purpose of showing such right.

BILL IN EQUITY to compel the specific performance of a written agreement, made on the 10th of July 1843, by which the Eastern Railroad Company agreed to sell and convey to the plaintiffs, Russell and Standish, certain lots of land numbered from one to nine inclusive on a plan of lots in Boston, and also certain other lots in another row as exhibited on the same plan and numbered from twelve to twenty-seven inclusive, upon the terms and subject to the reservations and restrictions following, to wit:

" The said Russell and Standish are to pay to the said corporation for the said land at the rate of two dollars for each and every square foot of land contained in that part of the first described parcel which lies northerly of a line drawn parallel to and seven feet distant northerly from the top of the stone wall, the southerly line of the base of which runs upon and along a line parallel with and four feet southerly of the southerly boundary line of the said first described parcel of land, and at the same rate for each and every square foot of land contained in the second described parcel of land, on the first day of January next ensuing the day of the date hereof, without interest, unless they shall in the mean time have erected on the said land such a number of substantial stone or brick buildings as shall render a mortgage of the said land satisfactory to the said company ; and shall then secure to the said corporation the payment of the said sum by a mortgage of said premises, with interest from the said first day of January."

Various other provisions and stipulations then followed, which are now immaterial; and the agreement continued as follows:

" The said Eastern Railroad Company hereby covenant with the said Russell and Standish, and their heirs and assigns, that upon payment of the purchase money for the said land as aforesaid, on or before the first day of January next, without interest ; or upon tender of a satisfactory note signed by the

said Russell and Standish, payable in five years with interest, payable half-yearly, from said first day of January, secured by a mortgage of the said land, duly executed, with insurance upon the buildings erected on the said land, payable to said company in case of loss, they will duly execute and deliver to the said Russell and Standish a good and sufficient deed of conveyance of the said land, with the easements, rights and privileges, and subject to the restrictions and reservations above mentioned, but free from all other incumbrances, with the usual covenants of warranty.

" And the said Russell and Standish hereby covenant for themselves and their heirs and assigns with the said company and their assigns, that they will, on or before the first day of January next, pay to the said Eastern Railroad Company or their assigns the purchase money for the said land, at the rate aforesaid, or will secure the same in the manner aforesaid by mortgage of the said premises; and that they will do and perform all things hereinbefore stipulated to be by them done and performed.

" And the said Eastern Railroad Company further agree, that before making a sale of either or any of the lots now reserved by the said company, and numbered twenty-eight, twenty-nine, and thirty on the said plan, they will first offer the same, for the space of six days, to the said Russell and Standish, on the same terms with the land hereby contracted to be conveyed; but in case the said Russell and Standish shall not, within six days after being notified in writing, signify their intention to purchase the same, and shall not within one month complete said purchase, the said company shall have the right to sell the same to other persons. And the said company further agree with the said Russell and Standish, that they will offer to them lots numbered ten and eleven on the said plan, on the same terms and in the same manner, in case the said lots shall not be used for an hotel."

In the present bill, the plaintiffs sought to compel the conveyance to them of the lots numbered ten and eleven, above referred to.

At the trial in this court, before *Hoar*, J., the plaintiffs in opening their case conceded that the lots in controversy, numbered ten and eleven, had been used for a hotel for ten years; but the bill alleged that the Eastern Railroad Company had recently sold the premises to the other defendant, William G. Weld, who by the terms of his deed took the same subject to the plaintiffs' rights therein, and who has since changed the use thereof, and intends hereafter to apply them to other purposes. But the judge ruled that, as the Eastern Railroad Company did use the lots for a hotel, the plaintiffs could not maintain this bill; and reported the question for the determination of the whole court.

*C. A. Welch*, for the plaintiffs. The whole agreement should be taken together. The last paragraph contains two branches or covenants. 1. A covenant extending to all future time that before selling certain other lots in the vicinity the company will offer them to Russell and Standish at a specified price. 2. A covenant that they will offer the lots in question to Russell and Standish on the same terms and in the same manner, in case they shall not be used for a hotel. The same construction should be put upon each covenant. The second extends to all future time as well as the first, in case the lots are not used as a hotel. Besides; the plaintiffs were buying all the land there, except a few reserved lots. It was an object for them to have a hotel erected in the vicinity. By employing the phrase " used as a hotel," it appears that the parties contemplated that when the use ceased the right to purchase should accrue. The ruling of the judge prevented the plaintiffs from offering evidence of the situation and acts of the parties, and the nature and condition of the property, for the purpose of showing their understanding of its terms. But such evidence would have been competent. *Knight* v. *New England Worsted Co.* 2 Cush. 271. *Bell* v. *Bruen*, 1 How. (U. S.) 169. *Ely* v. *Adams*, 19 Johns. 313. *Miller* v. *Gable*, 2 Denio, 541. *French* v. *Carhart*, 1 Comst. 96. *Attorney General* v. *Clapham*, 4 De G., Macn. & Gord. 591. 1 Greenl. Ev. §§ 285, 286.

*C. M. Ellis*, fo the defendants.

25 *

Russell & another *v.* Eastern Railroad Company & another.

CHAPMAN, J.* By the indenture of July 10, 1843, the corpo‹ ration agree that, upon the payment of the purchase money by the plaintiffs " on or before the first day of January next," they will duly execute and deliver to them a deed of certain lots therein described, with certain specified rights of way, drainage, &c. ; and the plaintiffs agree that they will " on or before the first day of January next" pay for the lots at two dollars per foot, in cash, or notes payable in five years with semi-annual interest, and secured by mortgage. The lots were marked and numbered on a plan which was recorded in the registry of deeds. Certain other lots which were marked and numbered on the plan were not included in this stipulation ; but an agreement was made giving the plaintiff a right of preëmption as to them, on certain specified conditions. Then following the agreement respecting the lots which are the subject of this suit : " And the said company further agree with the said Russell and Standish, that they will offer to them lots numbered ten and eleven on the said plan, on the same terms and in the same manner, in case the said lots shall not be used for an hotel."

It being conceded that the lots were used for a hotel, for the space of ten years, the right of preëmption ceased, if a literal construction is to be given to the agreement. But the plaintiffs contend that by a more reasonable construction of it the right of preëmption is perpetual, and arises whenever the lots shall cease to be used for that purpose. They contend that this bill for specific performance of the agreement can be maintained on the ground that the corporation has sold the lots, with the hotel erected thereon, to the defendant Weld, and that he, finding the hotel to be no longer profitable, has converted it into warehouses.

But the court are of opinion that such a construction is not reasonable. The language does not express the idea that whenever the lots shall cease to be used for a hotel, in case one shall be built upon it, the plaintiff shall have the right to purchase it at two dollars a foot. It expresses only the idea that the plaintiffs

---

* BIGELOW, C. J. did not sit in this case.

shall have the right of preëmption when it is determined by the company not to erect a hotel on the lots. And as payment is to be made " on the same terms and in the same manner " as for the other lots, it would seem that the parties did not intend to keep this stipulation open beyond the first of January next succeeding the date of the contract, being a period of about six months. To hold that the lots are subject to a perpetual right of preëmption to a party who is under no obligation to purchase them, whatever changes may take place in the value, and whatever structures may have been erected upon them, would be unreasonable, without a clear expression of such intent; and the court do not find such expression.

But the plaintiffs contend that, in order to aid the construction of the contract, they were entitled to offer evidence of the situation of the parties, the nature and condition of the property, and any acts of the parties at the time of the contract tending to show their understanding of its terms.

That evidence of this character is admissible for certain purposes is well established. Where the memorandum of a contract is expressed in brief terms, such proof may throw light upon it, and tend to make it intelligible. *Knight* v. *New England Worsted Co.* 2 Cush. 271. In *Attorney General* v. *Clapham*, 4 De Gex, Macn. & Gord. 591, Lord Chancellor Cranworth says it is like the evidence offered by a dictionary, which enables us to translate a foreign language ; or a book of science, which gives us the meaning of words of art. But the language in this case does not call for such explanation. The court are merely called upon to construe words which have a well established signification ; and it is not even suggested that the parties used any one of them in an unusual sense. Indeed it does not appear what specific facts the plaintiffs proposed to prove, nor is there any allegation in the bill which would seem to render evidence of this character useful in construing the agreement. The court are of opinion that the intent of the parties must be gathered from the language of the instrument exclusively. *Bill dismissed with costs.*